# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jacqueline F. Foshee, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Michael J. Astrue, Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 4:11-2912-RMG <br><br> **ORDER** |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on December 18, 2012, recommending that the Commissioner's decision be affirmed. (Dkt. No. 16). Plaintiff filed objections to the Magistrate Judge's report and the Commissioner filed a reply. (Dkt. Nos. 19, 23). As more fully set forth below, the Court reverses the decision of the Commissioner and remands the case to the administrative agency for action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de*

*novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 518-19 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1512. This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is generally given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist in the area for which she gave an opinion. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

For a claimant to establish eligibility for DIB, she must demonstrate two essential elements: (1) a disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A); and (2) a disability at the time the claimant has disability insurance status, *Id.* § 423(a)(1)(A); 20 C.F.R. § 404.131(a). Thus, a claimant must establish the presence of a disability prior to the last day of her disability insurance status. *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

Although the claimant for DIB must establish the presence of a disability prior to her last

date insured, medical evidence produced after the date last insured is generally admissible if such evidence "permits an inference of linkage with the claimant's pre-[date last insured] condition." *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 341 (4th Cir. 2012). Indeed, the Fourth Circuit recently noted in *Bird* that often the "most cogent proof" of a claimant's pre-date last insured disability comes from retrospective consideration of subsequent medical records. *Id.* (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). *Bird* further provides that the subsequent medical evidence need not include a retrospective diagnosis so long as the treatment related to the claimant's "history of impairments." *Id.* Additionally, *Bird* holds that such retrospective medical evidence "is especially appropriate when corroborated by lay evidence," including testimony of a claimant about his pre-date last insured condition. *Id.* at 342.

## Discussion

Plaintiff asserts her claim for disability began on August 4, 2002, the date she alleges she suffered a traumatic back injury from a fall. Transcript of Record ("Tr.") at 189, 236, 363. Under the Social Security Act, Plaintiff's last date insured for purposes of DIB is December 31, 2005. Tr. at 22. The record before the Court contains sparse evidence of complaints or treatment of Plaintiff until October 2004, when she was first seen by Dr. John Hibbitts. He documented a history of persistent back pain over the last year with pain radiating to Plaintiff's left leg. Tr. at 189. Dr. Hobbitts referred Plaintiff to a pain medicine specialist, Dr. William Odom, who first treated Plaintiff in December 2004. Tr. at 226.

Dr. Odom diagnosed Plaintiff with coccygodynia, a painful condition arising from the general area of the coccyx, or tailbone. *Id.* He also found that Plaintiff appeared to have "a persistent lumbar facet syndrome and SI joint neuritis." *Id.* Dr. Odom initially treated Plaintiff

with a series of epidural injections, which appeared to provide Plaintiff substantial relief. *Id.*

Plaintiff returned to Dr. Odom on December 6, 2005 and complained that the most recent injection performed in September 2005 had not been very effective. She also described the pain as being "different in nature" and "centered in the lower buttocks and is worse when she is sitting for periods of time." Dr. Odom documents that the pain was "severe" and "breaks through" her narcotic pain medication, Lortab. *Id.* He further documented a physical examination in which he found "exquisite tenderness over the coccyx that directly reproduces her pain." *Id.* Dr. Odom provided Plaintiff multi-level epidural injections to treat this worsening pain on December 6, 2005, but upon Plaintiff's return to the office on December 20, 2005 he noted that the benefits of the injections had "faded rather quickly." Tr. at 225. Plaintiff's last date insured was December 31, 2005.

Dr. Odom saw Plaintiff again on January 10, 2006 and expressed concern that the December 2005 injection had not been very effective in reducing his patient's coccyx pain. Tr. at 224. He found on physical examination the SI joints and paraspinous areas at L4 and L5 "exquisitely tender." *Id.* Dr. Odom diagnosed "persistent and recurrent SI joint neuritis despite all modalities employed thus far." *Id.* Over the ensuing two years, Dr. Odom utilized a variety of treatment approaches, including epidural injections and increasingly large amounts of narcotic medications. Tr. at 196-223. Plaintiff periodically reported some short term relief and then, with the passage of time, the effectiveness of the treatment would fade and she would complain of severe pain. *Id.* By May 2008, Dr. Odom became suspicious that Plaintiff was using excessive amounts of narcotic pain medications and discontinued prescribing all narcotic medications. Tr. at 193-94. When she failed to appear for a drug screen on July 23, 2008, he discontinued her

from his practice. Tr. at 192.

Thereafter, Plaintiff was evaluated in September and October 2008 at the Mayo Clinic in Jacksonville, Florida by specialists in pain management and rheumatology. She was diagnosed with a myofascial pain syndrome, which was thought to have "an element of sacroiliac dysfunction," and fibromyalgia. Tr. at 232-33, 236-37, 263-67, 269-70. Physicians at the Medical College of Georgia also evaluated and treated Plaintiff during the period 2008-2010 and diagnosed her with a diffuse pain syndrome and fibromylagia. Tr. at 339, 340-41, 343, 350, 353-54, 363-65, 369-71. The Plaintiff's complaints, physical examinations, and treatment course at the Mayo Clinic and the Medical College of Georgia appeared to bear a striking resemblance to the conditions diagnosed and treated by Dr. Odom *before* the date last insured, particularly during the December 6 and 20, 2005 office visits. Tr. at 225-26.

The decision of the ALJ focused predominantly on the Plaintiff's medical care from the date of the alleged onset of disability in 2002 until her date last insured of December 31, 2005. The ALJ gave brief passing mention of treatment provided in early 2006 (the last date mentioned was April 25, 2006), and no consideration of the clinical findings and diagnoses made in the more than 50 office visits Plaintiff had with physicians from June 22, 2006 until February 10, 2010, including highly specialized physicians at the Mayo Clinic and the Medical College of Georgia. Tr. at 192-219, 230-75, 334-74.[1] Further, Plaintiff's sworn testimony at the administrative hearing corroborated her claims of persistent and severe pain that only temporarily

---

[1] In fact, the ALJ criticized Plaintiff's counsel for offering the post 2005 medical evidence, including the evaluations performed at the Medical College of Georgia. Tr. at 49. Plaintiff's counsel correctly explained that he was offering the evidence to show that Plaintiff "has continually been treated for this same condition." *Id.*

responded to medical therapy. Tr. at 38-48.

Under the Fourth Circuit's November 2012 decision in *Bird*, the Commissioner is obligated to consider medical evidence post the date last insured as long as "that evidence permits an inference of linkage with the claimant's pre-DLI condition" and the failure to do so constitutes "an error of law."[2] 699 F.3d at 341-42. Further, the "possibility of such a linkage . . . may be enhanced by lay observations of a claimant's condition during the relevant time period," including testimony from the claimant herself. *Id.* In fact, *Bird* holds that "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence." *Id.* at 342.

The ALJ's failure to consider the vast majority of the medical evidence in the record, ignoring virtually all of the treatment post April 2006, requires remand to allow the retrospective consideration of the overlooked medical records. The post date last insured medical evidence clearly "permits an inference of linkage" by addressing the same complaints of severe pain in the same anatomical area of the body producing, per the claims of the Plaintiff, the same disabling impairments. *Id.* at 341. Further, the corroborating lay testimony of Plaintiff further compels the conclusion that a full retrospective assessment of the post date last insured medical evidence is necessary in assessing Plaintiff's disability claim.[3] The continuing evaluation, diagnoses, and

---

[2] The fact that the medical evidence may have been developed up to 3 years after the date last insured does not eliminate the need to consider such evidence if there is an inference of linkage to the Plaintiff's disability claim. The *Bird* court noted that the medical evidence required to be considered in *Moore v. Finch* was produced 6 or 7 years after the date last insured. *Bird*, 699 F.3d at 341; *Moore*, 418 F.2d at 1226.

[3] Although Plaintiff asserts a claim for disability running from August 2002, she need only prove that she was disabled on or before December 31, 2005, her date last insured, to be eligible for DIB.

treatment after December 31, 2005 may well provide the "most cogent proof" relating to Plaintiff's disability claim. *Id.*

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

January 25, 2013
Charleston, South Carolina